UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA CRUZ,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC.,<br><br>　　　　　　　Defendants. | Case No.:  23-cv-874-L-KSC<br><br>**ORDER ON JOINT DISCOVERY MOTION [Doc. No. 40]** |

　　　The parties' Joint Motion for Determination of Discovery Dispute is before the Court. *See* Doc. No. 40 (the "Joint Motion"). Plaintiff seeks an order compelling defendant to respond to (1) plaintiff's interrogatory numbers 4, 5, 18, and 22; and (2) plaintiff's request for production numbers 2, 8, 11, 12, 13, 16, and 21. *See id.* at 4-6. The parties also dispute whether defendant must produce a witness prepared to testify about certain topics under Federal Rule of Civil Procedure 30(b)(6). *See id.* at 5-6.

　　　The discovery process should, in theory, be cooperative and require little to no supervision from the Court. *Sali v. Corono Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). However, a party seeking discovery may move the Court to issue an order compelling production. Fed. R. Civ. P. 37(a). This Court has broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Discovery must be

"relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). If the information sought is relevant, the party resisting discovery bears the ultimate burden of convincing the Court that the discovery sought should not be permitted. *See V5 Techs v. Switch*, 334 F.R.D. 306, 309 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). The Court issues the following Order based on the Joint Motion [Doc. No. 40] and the parties' arguments during the lengthy telephonic hearing on September 15, 2022 [Doc. Nos. 32, 39].

### **(I)    The Issue of "Sampling"**

The issue of an appropriate sample size for producing discovery in this wage-and-hour class action has proven contentious. Plaintiffs seek to certify a class with over 8,000 members, but defendant objects to producing discovery pertinent to 8,000 plus class members prior to class certification. The parties do not dispute that a representative sample, randomly selected, of defendant's workforce should be adequate for plaintiff to prepare a motion for class certification, but they disagree on the appropriate sample size. Plaintiff will accept a sample size of 10% in exchange for a stipulation from defendant that 10% is a "statistically significant" sample size for purposes of certifying a class. *See* Doc. Nos. 39 at 4-7; 40 at 2-7. Defendant will not agree to such a stipulation. *See id.* Plaintiff also expressed concerns during the hearing about the potential for errors caused by outliers in the sample data skewing plaintiff's analysis of discrete issues. Doc. No. 39 at 9-10. As such, plaintiff wants to keep the proverbial door open for revisiting the sufficiency of the 10% sample size if such issues arise. *Id.*

As to the first issue, the Court *strongly* cautions defendant about the long-term wisdom of having its cake and eating it too. Plaintiff's offer to accept a relatively small sample size in exchange for defendant's promise that a 10% sample is sufficient for making a class certification determination is patently reasonable; while defendant's refusal to meet plaintiff in the middle is patently not. If defendant would prefer to propose a larger sampling size, one that it would be willing to agree would meet the "statistically significant" requirement, it is free to do so. Alternatively, this Court can instead order

defendant to produce discovery pertinent to the 8,000-plus-member class. This option is not advantageous to either party at this stage of the proceedings, but if defendant does not reach an appropriate compromise with plaintiff about a "statistically significant" sample size within seven days of this Order, the Court will consider ordering class-wide discovery.

As to the second issue, the Court agrees that unforeseen anomalous results ***might*** require revisitation of any agreed-upon sample data, at least as described by plaintiff's counsel at the hearing. *See* Doc. No. 39 at 9-10. The Court will accordingly leave the door open here; but at the same time plaintiff is cautioned against treating this as a chance for a second bite at the apple. If plaintiff identifies potential data errors, the Court will not get involved unless and until plaintiff makes a bona fide effort at working the issue out with defendant.

**(II) Plaintiff's Interrogatories**

Plaintiff seeks an order compelling responses to plaintiff's interrogatory ("Rog") numbers 2, 4, 5, 18, and 22; all of which defendant has thus far answered with objections only. *See* Doc. No. 40 at 4-5.  The Court will address each in turn.

Interrogatory No. 2

Plaintiff's Rog No. 2 states in full:

> Please IDENTIFY all YOUR employees responsible for creating work schedules for the CLASS MEMBERS during the RELEVANT TIME PERIOD.[1]

---

[1]   The Joint Motion actually states plaintiff wants responses to Request for Production No. 2, not Interrogatory No. 2. *See* Doc. No. 40 at 4. However, the Joint Motion describes RFP No. 2 as "employees responsible for scheduling work schedules of class members". *See id.* At the discovery hearing, the parties addressed Rog No. 2, but not RFP No. 2. *See* Doc. No. 39 at 44-45. Accordingly, the Court construes the reference to RFP No. 2 in the Joint Motion as a typo, and the Court will rule on Rog No. 2, on which counsel presented argument.

Although defendant's general scheduling practices are relevant to this case, this Rog is overbroad as drafted because it calls for detailed scheduling information for 8,000-plus class members. However, the Court will order defendant to testify about its scheduling practices generally. *See infra*. In this wage and hour class action, defendant's business practices are more germane to class certification and the merits than the specific identities of the people carrying out those practices, which is what this Rog calls for. The motion to compel is **DENIED WITHOUT PREJUDICE**. If, after taking defendant's Rule 30(b)(6) deposition, plaintiff can articulate concrete reasons why the requested names are necessary to certify a class or prevail on the merits, counsel must meet and confer, in person or over the phone, in good faith to narrow this request such that it targets relevant, discoverable information before plaintiff seeks further relief from this Court.

Interrogatory Nos. 4 and 5

Because these two requests are closely related, the Court will address them together.

Plaintiff's Rog No. 4 states in full:

> During the RELEVANT TIME PERIOD, please state all pay codes used by DEFENDANT on wage statements provided to the CLASS MEMBERS, including, but not limited to, "Overtime", "Regular", "OT .5", "COVID", "Holiday", "PTO", "Check up", "Hol Work", "Milestone Bonus" and "Ben Cred" (if you refer to documents in response to this interrogatory, please identify the specific Bates numbers for the responsive documents).

Plaintiff's Rog No. 5 states in full:

> For each pay code listed in response to Interrogatory No. 4, please provide an explanation regarding what each pay code means (if you refer to documents in response to this interrogatory, please identify the specific Bates numbers for the responsive documents).

On the merits, these Rogs simply ask the defendant to identify the various codes for different wage rates it uses on class members' pay statements, and then to describe those pay codes in simple and straightforward terms. The Court overrules defendant's objection that this information will be "self-evident." Doc. No. 39 at 36. Plaintiff is entitled to an

explanation from defendant to understand how and when defendant uses these codes. Because showing how the various pay codes were applied to class members is relevant to showing commonality and other issues germane to certifying a class, the motion to compel further responses to Rog Nos. 4 and 5 is **GRANTED**.

Interrogatory No. 18

Plaintiff's Rog No. 18 states in full:

Please state applicable dates wherein DEFEDNANT [*sic*] required CLASS MEMBERS to submit to COVID-19 screenings, including temperature checks, during the RELEVANT TIME PERIOD.

Plaintiff wants this information because of allegations that defendant required plaintiff and class members to submit to COVID-19 screenings but did not compensate plaintiff and class members for their time. *See* Doc. No. 39 at 44. Although the fact of these screenings, and the generalized practices through which they were allegedly implemented, is relevant to certifying a class and proving liability, a day-by-day list of every temperature check or other COVID-19 screening performed on every single class member is overbroad. Accordingly, the motion to compel is **DENIED**.

Interrogatory No. 22

Plaintiff's Rog No. 22 states in full:

IDENTIFY all forms of compensation available to the CLASS MEMBERS, including PLAINTIFF, during the RELEVANT TIME PERIOD, including but not limited to, overtime compensation, bonus compensation, "Ben Cred" bonus compensation, "Milestone" bonus compensation, incentive compensation, sick pay compensation, shift differential compensation and reporting time.

Plaintiff argues this information is necessary for purposes of calculating the "regular rate of pay" applicable to class members for certain wage-and-hour claims. Doc. No 39 at 46. Defendant does not directly rebut this claim, arguing instead that no answer is necessary here because plaintiff could glean the information by analyzing unspecified payroll records defendant has already produced. *Id.* at 47. Plaintiff, anticipating the potential for data errors

caused by an undersized sample size, argues something might be missed if plaintiff is required to reverse engineer the information based solely on the data in plaintiff's possession. *Id.* This information is exactly the kind of evidence that is necessary to show common proof in a class action like this case. Because this information is germane to certifying a class and meeting plaintiff's ultimate burden of persuasion, the motion to compel is **GRANTED** as to Rog. No. 22.

### (III) Plaintiff's Requests for Production

Plaintiff seeks an order compelling responses to plaintiff's request for production ("RFP") numbers 8, 9, 11, 12, 13, 16, and 30, all of which defendant has thus far answered with objections only. Doc. No. 40 at 4-5. The Court will address each in turn.

<u>RFP No. 8</u>

RFP No. 8 states in full:

> For the RELEVANT TIME PERIOD, produce all of DEFENDANT'S policies for providing business expense reimbursement to the CLASS MEMBERS, including PLAINTIFF, including but not limited to, reimbursement for personal cellular telephone use.

Plaintiff argues this is relevant because the case involves putative class claims related to defendant's alleged failure to reimburse for business expenses. Doc. No. 39 at 18. Defendant argues the plaintiff is not entitled to discover any policies related to business expense reimbursements *other than* the company Bring Your Own Device ("BYOD") policy because the only factual allegations in the complaint are that plaintiff was not reimbursed for cell phone usage, ergo she is not "typical" of other class members and will not be able to certify a class for anything other than cell phone reimbursements. *Id.* at 18-19.

The allegations of the Complaint cite cell phone costs as one example of unreimbursed business expenses, but plaintiff and the class also allege a failure to reimburse for other expenses. *See* Doc. No. 1-2 ¶¶ 23, 47(f), 107-110. Even if the allegations were limited to cell phone expenses, defendant's policies for reimbursing

business expenses are relevant to the subject matter of this action because cell phone reimbursements potentially fall within the scope of more than one policy. The Court also notes the scope of discovery is broader than only that information narrowly construed to be directly related to the pleadings. *See generally Herbalife Int'l of Am., Inc. v. Kamel*, CV 21-6982 MWF (PVCx), 2023 U.S. Dist. LEXIS 130800, at *8-9 (C.D. Cal. July 20, 2023) (collecting cases). Thus, the details of particular factual allegations do not impose a hard limit on the scope of permissible discovery.

More fundamentally, "merits based" arguments like this one are not persuasive. To begin with, this Court is not in the position to decide dispositive questions like "typicality" for the purposes of class certification, so asking the Court to resolve a discovery dispute by considering the merits puts the cart before the horse. *See Nat. Res. Def. Council v. Curtis*, 189 F.R.D. 4, 9 (D.D.C. 1999); *see also Williams v. Superior Ct.*, 3 Cal. 5th 531, 551 (holding "to require a party to supply proof of any claims or defenses as a condition of discovery in support of those claims or defenses is to place the cart before the horse"). Because this Court doesn't have authority to decide if plaintiff's claims are typical, the Court will not deny discovery on the basis of plaintiff's claims not being typical. Moreover, as a matter of pure logic, "plaintiff does not get discovery to prove her claims because she is going to lose" is hopelessly circular. Defendant's objections are **OVERRULED** and the motion to compel is **GRANTED**.

<u>RFP No. 9</u>

RFP No. 9 states in full:

> Please produce in electronic searchable spreadsheet format, all business expense reimbursements made during the RELEVANT TIME PERIOD to all CLASS MEMBERS, including PLAINTIFF.

Defendant raises the same objections it interposed to RFP No. 8, chiefly that nothing other than cell phone reimbursements are at issue in this case. *See* Doc. No. 39 at 20. Those objections are **OVERRULED** for the same reason as they were overruled as to RFP No. 8. Further, this RFP seeks evidence sufficient to prove liability as to the entire class.

Although discovery is not bifurcated in this case, the parties are specifically directed to prioritize discovery on issues related to certifying a class before turning to the merits. The Court has already ordered the parties to either reach a compromise on a statistically significant sample size or produce class-wide discovery. If the parties reach an agreement on sample size, the scope of information responsive to this RFP will be restricted to the agreed-upon sample and the remainder of the information must be produced on or before **January 12, 2024**, two weeks before the close of fact discovery on January 26, 2024.

This request, however, is partly deficient because it purports to dictate the form in which defendant produces responsive documents. Rule 34 requests cannot be used to compel a party to create documentary evidence which is not already in existence in some form at the time the request is propounded. *See Harris v. Advance. Am. Cash Ctrs.*, 288 F.R.D. 170, 172 (S.D. Ohio 2012); *Barnes v. District of Columbia*, 281 F.R.D. 53, 54 (D.D.C. 2012); *Rockwell Int'l Corp. v. H Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 513 (W.D. Pa. 1983). If the requested document exists, it must be produced. However, if plaintiff is using this request as an interrogatory to ask defendant to compile data in its possession into a single document in a specified format, it is not appropriate under Rule 34. The Motion to Compel is accordingly **GRANTED IN PART** because no new documents need be created by defendant.

RFP Nos. 11-13

These three requests concern overlapping subject matter, so the Court will address them at the same time.

RFP No. 11 states in full:

For the RELEVANT TIME PERIOD, produce all DEFENDANT'S training policies and procedures applicable to the CLASS MEMBERS, including PLAINTIFF.

RFP No. 12 states in full:

For the RELEVANT TIME PERIOD, produce all DEFENDANT'S training materials and provided applicable to the CLASS MEMBERS, including

PLAINTIFF.

RFP No. 13 states in full:

For the RELEVANT TIME PERIOD, produce all of DEFENDANT'S policies for pre-and post-shift procedures, and duties applicable to the CLASS MEMBERS, including PLAINTIFF.

Defendant does not (and cannot credibly) assert these requests seek at least *some* documents germane to this case, but at the same time defendant's objection that some company policies and training objectives are irrelevant here [Doc. No. 39 at 21] is well taken. For example, defendant's policy for FMLA leave doesn't bear on whether a class is certifiable or whether defendant violated any labor laws. Thus, defendant is willing to produce only those documents that are "relevant" to this case. *See* Doc. No. 39 at 21. Plaintiff objects to this approach on the basis that defendant cannot be trusted to unilaterally decide what is "relevant" and discoverable because defendant has a keen interest in not producing discovery. *Id.*

This is a dispute that could have been solved through collegial meet-and-confer efforts. Unfortunately, that did not happen. The motion to compel will be **GRANTED IN PART**. Defendant must produce all responsive documents to which it has no objection. As to those responsive documents defendant intends to withhold, defendant has ten days to produce a list of withheld documents. Counsel must meaningfully meet and confer to decide if any further documents can be produced. If the parties cannot agree, they may jointly contact the Court for assistance. However, given the fact that this particular dispute is germane to a wage and hour class action and falls *well* within the expertise of seasoned labor and employment litigators, the Court strongly encourages the parties to reach consensus on the appropriate scope of production for these requests.

RFP No. 16

RFP No. 16 states in full:

For the RELEVANT TIME PERIOD, produce all COMMUNICAITONS

[*sic*] between DEFENDANT and CLASS MEMBERS regarding COVID-19 screenings, including temperature checks when CLASS MEMBERS reported to work

Among plaintiff's substantive class action allegations are that defendant required class members to undergo COVID-19 screenings, but class members were not compensated for those screenings but should have been as it constitutes compensable work time. *See* Doc. No. 1-2 ¶ 8. Defendant's communications to class members vis-à-vis any such screenings would be discoverable in this action. Defendant objects to answering fully but has offered to produce responses if the communications are limited to "corporate" communications, and only if the communications were coming *from* the company. Doc. No. 39 at 23-26. At the hearing, defendant suggested store managers would be an appropriate cutoff for the level of communications that could be attributed to the corporation. *Id.* at 25. The Court agrees because plaintiff has not shown that anyone below the level of a store manager has any role in shaping or disseminating corporate policy.

As to the distinction between communications directed from defendant to class members and communications from particular class members to the defendant, plaintiff did not explain for the Court why communications from a single class member on the subject of COVID-19 screenings would be relevant to certifying a class or proving class-wide allegations on the merits. The motion to compel is accordingly **GRANTED IN PART**, and defendant only needs to produce communications coming *from* defendant *to* class members from the managerial level and above about the COVID-19 screenings at issue.

RFP Nos. 21 and 30

The Court will address these together because they overlap in subject matter.

RFP No. 21 states in full:

All DOCUMENTS, in electronic format, which evidence COMMUNICATION(S) between PLAINTIFF and DEFENDANT, during the RELEVANT TIME PERIOD, including without limitation, email, correspondence regarding policies or procedures, handbooks, letters,

>memoranda, grievances, applications, postings, complaint, wage information, benefit information and or work schedules.

RFP No. 30 states in full:

>All DOCUMENTS evidencing COMMUNICATION or complaints that YOU have received from PLAINTIFF during the RELEVANT TIME PERIOD.

These requests essentially seek all communications between plaintiff and defendant.[2] The Court notes that any document responsive to RFP No. 30 would necessarily be responsive to the more expansively drafted RFP No. 21. Drafting inefficiency notwithstanding, the thrust of defendant's objection to these RFPS is that they are overly broad because they might encompass random chats between plaintiff and her coworkers. *See* Doc. No. 39 at 29. But the RFP does not ask for random chats between plaintiff and her coworkers. It asks for communications between plaintiff and *defendant*. Because defendant is a business entity, it can only speak and act through its agents acting in the course and scope of their agency. *See Swift & Co. v. Gray*, 101 F.2d 976, 980-81 (9th Cir. 1939); *Von Schrader v. Milton*, 96 Cal. App. 192, 201-02 (1929). Defendant's objection is therefore **OVERRULED**. Defendant must obtain and produce all communications between plaintiff and any employee or agent of defendant acting within the course and scope of their employment. The motion to compel responses to RFP Nos. 21 and 30 is **GRANTED**.

### (IV) Plaintiff's 30(b)(6) Deposition Notice

The parties have a host of disagreements over the scope of plaintiff's deposition notice served pursuant to Federal Rule of Civil Procedure 30(b)(6). The notice calls for

---

[2]  As the Court noted with respect to RFP No. 16, communications peculiar to the defendant and specific unnamed class members are less relevant to this lawsuit, and thus not necessarily discoverable. That reasoning does not apply to communications between defendant and the named plaintiff because even if this case is not certified as a class action, plaintiff will still have her individual claims.

testimony on 27 different topics. Defendant objects, in whole or in part, to topic numbers 2, 5, 8, 9, 10, 11, 12, 14, 15, 17, 18, 19, and 27. *See* Doc. No. 40 at 5-6. The Court notes at the outset that Rule 30 does not generally provide for an order compelling testimony before the deposition even takes place. Thus, the Court construes this issue as a request for a protective order by defendant made pursuant to Federal Rule of Civil Procedure 26(c).

Topic No. 2

Topic No. 2 demands testimony related to:

> DEFENDANT'S policies for providing compensation to the CLASS MEMBERS during the RELEVANT TIME PERIOD including, but not limited to, overtime compensation, bonus compensation, and incentive compensation.

This issue is largely resolved by Court's Order compelling further responses to Rog No. 2. Defendant must produce a witness adequately prepared to testify about the information contained in the answer to that Rog, and any other information reasonably pertinent thereto. The motion for a protective order is **DENIED** as top Topic No. 2.

Topic No. 5

Topic No. 5 demands testimony related to:

> DEFENDANT'S policies for recording, tracking, and scheduling the hours worked and meal periods of the CLASS MEMBERS.

Defendant's timekeeping practices are directly relevant to this wage and hour action in which the plaintiff alleges unlawful timekeeping practices, missed meal periods, and missed rest periods. Although defendant proposes some "limitations" on this scope of this deposition testimony, none are appropriate here. In fact, plaintiff should be able to take testimony sufficient to prepare this case for dispositive motions and trial, not just a class certification motion, because (a) discovery is not bifurcated; and (b) there is no need to do this deposition more than once. The motion for a protective order is **DENIED** as to Topic No. 5.

////

Topic No. 8

Topic No. 8 demands testimony related to:

DEFENDANT'S policies with respect to providing bonus and incentive compensation to the CLASS MEMBERS.

The Court's order compelling further responses to Rog No. 22 resolves this dispute. Defendant must produce a witness capable of testifying about the information described in Rog No. 22, and any other information reasonably pertinent thereto. The motion for a protective order is **DENIED** as to Topic No. 8.

Topic No. 9

Topic No. 9 demands testimony related to:

The reasons why CLASS MEMBERS are provided bonus and incentive compensation.

Bonus compensation is certainly relevant to "regular rate of pay" claims under California labor law. Defendant suggests this is overbroad if it includes discretionary bonuses and proposes limiting testimony to only those bonuses defendant considers nondiscretionary. Doc. No. 39 at 56. Plaintiff responds by asserting defendant is not trustworthy to distinguish correctly between discretionary and non-discretionary bonuses. *Id.* at 56-57. Whether bonus compensation must be included in workers' regular rate of pay is a complex question under California law that requires, among other things, distinguishing between discretionary and non-discretionary bonuses. *See generally Ferra v. Lowes Hollywood Hotel, LLC*, 5 Cal. 5th 858 (2021). Whether or not a bonus is discretionary is not up to an employer: it is an objective inquiry that requires consideration of the facts and circumstances under which the bonus is paid, including the reasons for paying the bonus. *See id.* at 863-64 (incorporating federal FLSA regulations that differentiate between discretionary and non-discretionary bonuses). Thus, this topic is directly relevant to the inquiry of whether defendant's incentive compensation plans are

discretionary, and therefore whether payments made thereunder needed to be included in the regular rate of pay. The motion for a protective order as to Topic No. 9 is **DENIED**

Topic No. 10

Topic No. 10 demands testimony related to:

> DEFENDANT'S policies and procedures with respect to providing business expense reimbursement to the CLASS MEMBERS, including but not limited to reimbursement for personal cellular telephone use.

Defendant objects on the same basis as the objection to RFP No. 8. *See* Doc. No. 39 at 70. The Court overrules the objection on the same basis, and the motion for a protective order as to Topic No. 10 is **DENIED**.

Topic No. 11

Topic No. 11 demands testimony related to:

> DEFENDANT'S policies and procedures with respect to CLASS MEMBERS pre- and post-shift duties.

The general tenor of defendant's objections is that, as far as counsel is aware, defendant has no policies and procedures related to the class member's "pre- and post-shift duties." Doc. No. 39 at 58. If so, then it is not a burden to produce a witness who can say as much, thus removing doubt and uncertainty on this issue. But if there is substantive testimony to be given, the Court's order compelling further responses to RFP. No. 13 requires testimony within the scope of the policies produced responsive to that request. The request for a protective order as to topic No. 11 is **DENIED**.

Topic No. 12

Topic No. 12 demands testimony related to:

> The job duties performed by the CLASS MEMBERS.

Defendant objects on the basis this should be limited to job duties actually performed by plaintiff. Doc. No. 39 at 71. At the hearing, plaintiff's counsel suggested the documentary evidence of job descriptions provided in written discovery would be adequate if a 30(b)(6) witness is able to testify generally about those job descriptions. *Id.* at 71-72.

1  The resolution proposed by plaintiff is adequate, and the motion for a protective order is
2  accordingly **GRANTED IN PART**. Defendant must produce a witness to testify about the
3  job duties and descriptions produced in written discovery.

   Topic No. 14

   Topic No. 14 demands testimony related to:

   Defendant's policies and procedures with respect to training the CLASS MEMBERS with respect to their job duties, timekeeping, meal and rest periods.

   The Court's order compelling further responses to RFP Nos. 11 and 12 requires defendant produce a witness prepared to testify about the information responsive to those two RFPs. The motion for a protective order as to Topic No. 14 is accordingly **DENIED**.

   Topic No. 15

   Topic No. 15 demands testimony related to:

   The work schedules of CLASS MEMBERS.

   Defendant objects because, if taken at face value, this topic would require witnesses capable of testifying about the weekly working schedules of every single member in the prospective class. Doc. No. 39 at 59-60. Plaintiff responds that defendant's worker scheduling practices more generally, for example, how workers are scheduled at a given store, would be sufficient. *Id.* at 59-60. Defendant's objection is well taken, but the compromise solution proposed by plaintiff is relevant to certifying the case as a class action.  The motion for a protective order as to Topic No. 15 is accordingly **GRANTED IN PART**. Defendant must produce a witness prepared to testify about scheduling practices generally, but anything more granular than scheduling on a store-wide basis falls beyond the scope of proportionality required by Rule 26.

   ////
   ////
   ////
   ////

Topic No. 17

Topic No. 17 demands testimony related to:

Locations in California where the CLASS MEMBERS worked.

Defendant contends that, if plaintiff wants a list of all locations in California where class members worked, a single interrogatory could obtain the information. Plaintiff argues this "could be done" as a deposition, but at the same time concedes this could indeed by accomplished by an interrogatory. Doc. No. 39 at 60. The Court considers deposition testimony that merely identifies locations where class members worked to be a waste of time and energy. The motion for a protective order as to Topic No. 17 is **GRANTED.** At the same time, the information is generally relevant to certifying a class and establishing plaintiff's case on the merits. Plaintiff may serve an interrogatory asking defendant to identify every store where class members worked. Given that handling this discovery in the form of an interrogatory was defendant's proposal, the Court expects defendant will promptly provide non-evasive answers to plaintiff's interrogatory.

Topic No. 18

Topic No. 18 demands testimony related to:

The general corporate hierarchy in which the CLASS MEMBERS worked.

Although the wording of this topic is vague, plaintiff has clarified that this request seeks testimony related generally to how defendant's retail stores are set up, managed, and operated. Doc. No. 39 at 75. Defendant argues this should be limited to the store in which plaintiff worked. *Id.* But plaintiff needs to certify a class of employees who worked at ***all*** the stores in California if she wants to proceed on a class-wide basis. Thus, limiting the scope of testimony to a single store would be too narrow. The request for a protective order as to Topic No. 18 is **GRANTED IN PART**. Testimony shall be limited to the general "corporate hierarchy" under which Nike retail stores are set up, managed, and operated; but not limited specifically to the store in which plaintiff worked.

////

////

Topic No. 19

Topic No. 19 demands testimony related to:

> The custody of records and identification of location of all records that are relevant to any claims or defenses in this case including, but not limited to payroll records and time records.

Plaintiff suggests she needs information about defendant's ability to find and produce information in discovery. Doc. No. 39 at 62. Defendant characterizes this as an improper attempt at conducting meta-discovery. *Id.* Discovery about the discovery process itself is disfavored because it bloats the costs of litigation and thrusts the parties into satellite disputes wholly ancillary to the merits of the action. *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019). It should thus only be permitted where there is some indication that it is necessary to resolve a concrete dispute about the discovery process in a particular case. *See id*.

As the Court's docket clearly reflects, the parties to this action have truly epic disputes about discovery. *See* Doc. Nos. 27-29, 31, 32, 34, 37, 38. At this point, the parties' disputes are more in the nature of categorical refusals by defendant to produce ***any*** discovery and categorical insistences by the plaintiff for defendant to produce ***all*** the discovery. These are not the kinds of concrete, particularized disputes about which the Court might consider permitting meta-discovery. The motion for a protective order is **GRANTED** as to Topic No. 19.

Topic No. 27

Topic No. 27 demands testimony related to:

> The PERSONS that assisted YOU in processing CLASS MEMBERS' payroll during the RELEVANT TIME PERIOD (e.g. issuing wage statements and wage).

This Topic suffers the same fatal flaw as Topic No. 17 in that it seeks little more than a list of names and could thus be an interrogatory. The motion for a protective order is **GRANTED** as to Topic No. 27. However, plaintiff may propound an interrogatory to

obtain a list of names she wants, and the Court expects defendant will provide a timely, non-evasive response.

### (V) Residual Concerns Over a Privilege Log

Plaintiff suspects defendant has withheld documents under one or more privileges in response to several requests for production. Doc. No. 40 at 6. Defendant's position is equivocal at best, neither confirming nor denying the existence of documents withheld as privileged. *Id.* Defendant must perform a diligent search and a reasonable inquiry, ascertain conclusively whether responsive documents have been withheld as privileged, and produce a privilege log that conforms to the requirements set forth in the Court's Chamber's Rules if any such documents have been withheld.[3] If no privileged documents have been withheld, then supplemental responses *shall* be provided that make no assertion of privilege, thus removing doubts about the sufficiency of defendant's productions.

### (VI) Conclusion and Order

Plaintiff's motion to compel is **GRANTED in part and DENIED in part** as explained in this Order. Defendant's request for a protective order as to the pending 30(b)(6) deposition is **GRANTED in part and DENIED in part** as explained in this Order. Defendant shall produce all supplemental responses and documents required by this Order on or before **October 30, 2023**. If there are any outstanding documents and responses to plaintiff's first set of discovery requests that defendant has *voluntarily* agreed to produce, they shall also be produced on or before **October 30, 2023**, so the parties' protracted discovery dispute on this issue will cease.

---

[3] Correspondence between defendant and defendant's outside litigation counsel representing defendant in this action need not be accounted for on a privilege log because such communications are virtually guaranteed to be privileged, and logging them is a poor use of defendant's time. This extends only to communications between counsel appearing in this action and defendant. Documents claimed to be privileged as attorney-client communications or the work product of attorneys (in-house or otherwise) *not* appearing on defendant's behalf in this action must absolutely be logged.

**IT IS SO ORDERED.**

Dated: October 20, 2023

Hon. Karen S. Crawford
United States Magistrate Judge