UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA CRUZ,<br><br>                    Plaintiffs,<br><br>v.<br><br>NIKE RETAIL SERVICES, INC.,<br><br>                    Defendants. | Case No.:  23-cv-874-L-KSC<br><br>**ORDER ON JOINT DISCOVERY MOTIONS [Doc. Nos. 47, 48]** |

Two joint discovery motions are presently before the Court. Doc. Nos. 47, 48. The two motions address the issues of (a) whether defendant needs to produce complete wage statements for class members [Doc. No. 47]; and (b) whether the parties will engage in a *Belaire-West* opt-out notice[1] prior to production of the class list [Doc. No. 48]. Defendant also filed an objection. *See* Doc. No. 49. The thrust of defendant's objection is that plaintiff

---

[1]    *Belaire-West* or *Belaire* notice takes its name from *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007); *see also Williams v. Superior Court*, 3 Cal. 5th 531, 553 (2017) (describing the history of *Belaire* notice and summarizing the procedure). The crux of a *Belaire* notice is that, before defendant discloses unnamed class members' contact information to plaintiff and plaintiff's counsel, the class members receive a notice of the pending class action and a means of opting out of having their contact information disclosed. *See Williams*, 3 Cal. 5th at 533.

1

did not give defendant enough time to participate in preparing the joint motion to compel the class list. *See id.* More specifically, it appears defendant did not agree to the inclusion of two exhibits in the joint exhibit list the Court directed the parties to prepare as part of the joint motion. *Id.* at 4. Defendant apparently misunderstands the "joint" nature of the exhibit list. The Court did not want the parties to agree on all the exhibits that should be submitted. Rather, the Court wanted all the exhibits in one place with no duplicates to simplify its review of the documents purportedly relevant to this dispute. There was therefore no need to "object" because plaintiff did not need defendant's consent. Defendant also objects to what it considers insufficient efforts by plaintiff to meet and confer about the wage statements. *Id.* at 5. Defendant had already made that argument in its opposition portion of the joint motion to compel the wage statements. Doc. No. 47 at 5. Nothing in the substance of defendant's objection moves the needle on the Court's decision. The objection is **OVERRULED**.

**(A)** **Whether Defendant Must Produce Wage Statements**

Defendant voluntarily agreed to supplement responses to plaintiff's Request for Production No. 22, which seeks copies of wage statements for class members. Doc. No. 46 at 2; Doc. No. 47 at 2-3. Rather than produce the actual wage statements, defendant produced a spreadsheet that had been exported from defendant's personnel management software. *Id.* Plaintiff contends the spreadsheet is inadequate. Doc. No. 47 at 3-4. In a wage and hour class action where plaintiff's claims include claims for wage statement violations, class members' wage statements will generally be relevant. The question is whether the payroll data at issue here constitute an adequate substitute for the wage statements themselves.

Defendant has given multiple reasons it supposedly cannot produce the actual wage statements. Defendant currently claims it must engage in a labor-intensive process to pull wage statements from its personnel management software. *See* Doc. No. 47 at 7. But this explanation differs from the one previously offered by defense counsel, namely that defendant did not have control of the wage statements at all because it uses ADP to process

its payroll. These shifting explanations give the Court reason to reject defendant's proffered excuses. The Court overrules any objections based on defendant's asserted burden.

Defendant also argues plaintiff did not give defendant a meaningful chance to participate in preparing the joint motion. Doc. No. 47 at 5-8. Paragraph VIII.E.3 of the Court's Chambers Rules require any party opposing a joint motion receives a "reasonable" opportunity to respond. Defendant argues plaintiff made no effort to meet-and-confer about the adequacy of the payroll data, and then presented defendant with a joint motion at eleven in the morning the day the motion was due for filing. *Id.* The Court issued a short briefing schedule on this issue because the period for conducting class certification discovery is quickly closing and, despite the level of apparent contention between the parties' dispute here, this is a profoundly simple issue. The only question before the parties and the Court is whether "defendant's alternative to producing wage statements [is] nonetheless adequate?" Plaintiff did not face an onerous task to first meet-and-confer then prepare a joint motion that gave defendant fair opportunity to respond. But plaintiff dropped the ball here, and, whatever the Court's view of the merits, plaintiff's lack of failure to involve defendant warrants denial of the motion for failure to comply with the Court's Rules.

Turning to the merits, plaintiff's justification for seeking the actual wage statements is that defendant's spreadsheet omits some information that is, in a general sense, required to appear on wage statements. Doc. No. 47 at 3-4. But plaintiff has failed to articulate how or why the supposedly missing information is material to *this case*, as opposed to wage and hour class action litigation generally. Accordingly, the Court is not persuaded that defendant's payroll data is inadequate for purposes of this case at the pre-class certification stage of the litigation. The motion to compel production of the wage statements is therefore **DENIED**.

The Court adds this caveat: defendant has repeatedly represented that everything plaintiff needs to move for class certification is contained in the payroll data export. The Court will hold defendant to that representation. If defendant's repeated assurances on this matter prove untrue, i.e., if defendant tries to oppose plaintiff's class certification motion

by claiming plaintiff cannot certify a class due to lacking evidence, and if the missing evidence that could help certify the class is only contained in the wage statements, the Court will be prepared to revisit this issue. If, however, defendant does not raise the issue, the Court assumes there will be no prejudice to plaintiff from not having the actual wage statements for purposes of seeking and obtaining class certification.

### (B) Whether the Parties Will Give *Belaire-West* Notice Prior to Producing the Class List

Plaintiff's Request for Production No. 18 and Interrogatory No. 3 together demand defendant produce the class list in this matter. *See* Doc. No. 48 at 2-3. The parties appeared to have resolved their disputes as to the class list as far back as October 3, 2023, by having defendant supplement its discovery responses, but only as to 10% of the putative class. *See* Doc. No. 40 at 2. Defendant specifically "agreed to provide supplemental/further supplemental responses, and responsive documents where applicable." *Id.* Defendant produced supplemental discovery responses on October 30, 2023. *See* Doc. No. 48-1 at 171, 187. However, those responses state defendant will not produce the class list until unnamed class members receive *Belaire* notice. *See id.* The parties dispute whether *Belaire* notice was part of their agreement at the time defendant agreed to supplement discovery. *See generally* Doc. No. 48. They also dispute whether *Belaire* notice is even appropriate in this case. *Id.*

#### (1) Whether the Parties Agreed to *Belaire* Procedures

Defendant contends *Belaire* notice had always been part of the agreement to produce discovery, but plaintiff contends defendant dropped its insistence on *Belaire* notice prior to the agreement to supplement discovery. *See* Doc. No. 48 at 7-10, 13-17. The parties both accuse each other of acting in bad faith: plaintiff accuses defendant of belatedly reviving the demand for a *Belaire* notice as a means of obstructing discovery, while defendant suggests plaintiff is merely claiming ignorance about *Belaire* notice to cover up for her failure to diligently pursue sending the *Belaire* notice out in the first place. *See id.* But the

parties good faith (or lack thereof) is immaterial to the issue of what the parties objectively agreed to.

Plaintiff's initial discovery requests stated plaintiff would voluntarily go through the *Belaire* notice period as a means of forestalling defendant's objections. *See, e.g.*, Doc. No. 48-1 at 22. Following service of that discovery, the parties met and conferred for months trying to fine-tune appropriate language for a *Belaire* notice. *See* Doc. No. 48-1 Exs. 3, 6-8. There is thus no dispute the parties initially planned to send out *Belaire* notice to class members prior to defendant producing the class list and class member contact information.

On September 15, 2023, the Court held a protracted discovery hearing with counsel for both parties. *See* Doc. Nos. 32, 39. During that hearing, counsel obliquely addressed the possibility of a *Belaire* notice, although they seemed nowhere near agreement as to how it should be done. *See* Doc. No. 39 at 27. On September 20, 2023, counsel met and conferred further about the class list. *See* Doc. No. 48-1 at 147. Plaintiff's counsel's email summarizing the substance of the call makes no mention of a *Belaire* notice. *See id.* Defendant does not argue counsel's email is incomplete or inaccurate, and there is no information before the Court otherwise suggesting plaintiff failed to mention the *Belaire* notice in the written meet-and-confer summary.

When the parties submitted a joint status report on October 4, 2023, they indicated defendant "agreed to provide supplemental/further supplemental responses, and responsive documents where applicable" for the class list, limited to 10 percent of the putative class. *See* Doc. No. 40 at 2:20-26. The joint status report is silent on the issue of *Belaire* notice. Defendant's supplemental discovery responses, served on October 30, 2023, again raised the *Belaire* issue. *See* Doc. No. 48-1 at 171, 180, 187, 199.

Based on the ambiguity on this issue, the Court concludes that, as of the submission of the joint report, *Belaire* notice was off the table. Given the importance of the *Belaire* notice issue, which played such a huge role in the parties' meet and confer efforts, it is illogical to conclude the parties intended to require such notice yet failed to reference it in their subsequent joint status report and the preceding meet-and-confer summary. Thus, the

Court concludes the parties had abandoned the requirement of providing *Belaire notice* because defendant would produce the entire class.

### **(2)   Whether the Court Would Order *Belaire* Notice Even if the Parties Had Agreed to It**

If there was an agreement to engage in a *Belaire* notice period that later fell apart, the Court would only *order* the parties to go through with it if it were legally warranted based on the facts of the case. *Belaire* notice is potentially appropriate in a case like this to protect underlying state-law privacy rights. *See Williams v. Superior Court*, 3 Cal. 5th 531, 553 (2017). On the other hand, courts have "frequently" used ordinary protective orders instead of *Belaire* notices to protect absent class members' privacy. *See Davidson v. Oreilly Auto Enters., LLC*, 968 F.3d 955, 965 (9th Cir. 2020). It is settled the party resisting discovery bears the ultimate burden of convincing the Court the discovery sought should not be permitted. *See V5 Techs v. Switch, Ltc.*, 334 F.R.D. 306, 309-10 (D. Nev. 2019) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Opt-out notices are protective orders because the objecting party is the one who does not want to disclose the information without the opt-out procedure in place, whereas the requesting party would be fine with having the information free and clear. *See Pioneer Elecs. (USA), Inc. v. Superior Ct.*, 40 Cal. 4th 360, 368 (2007). Thus, the Court concludes it is defendant's burden to persuade the Court to issue a protective order requiring *Belaire* notice.

The Court has already recited the history of the meet-and-confer process here, and it appears plaintiff endeavored to negotiate an opt-out notice to avoid defendant's objection. Defendant, however, appears to have rejected every opt-out notice proposed by plaintiff. Now, defendant claims plaintiff is the one who has not been diligent about the *Belaire* notice. Doc. No. 48 at 16. Plaintiff is the party who has been pursuing discovery, and ultimately had to file a motion to compel in this case. Although defendant was at all times free to ask the Court to issue a protective order requiring a particular *Belaire* notice, defendant did not do so

Defendant relies in part on *Davidson*, 968 F.3d at 965 for the premise that a plaintiff needs to follow through on offers to engage in *Belaire* notice as a means of securing discovery. *See* Doc. No. 48 at 16. Whatever the import of *Davidson*, this case is distinguishable from that case. In *Davidson*, the defendant offered to do a *Belaire* notice, but the plaintiff "did not follow up on" the offer. *See* 968 F.3d at 965. In this case, the record shows plaintiff followed up on the offer again and again, but defendant refused to send out any of the notices proposed by plaintiff. If defendant had been reasonable, it could have used one of plaintiff's proposed notices. Alternatively, it could have asked the Court to issue an order requiring defendant's choice of notice. Unlike the plaintiff in *Davidson*, plaintiff did not fail to show diligence here. Accordingly, defendant's right to impose *Belaire* notice requirements on plaintiff is forfeited, even if there had previously been an informal agreement to engage in a *Belaire* notice between the parties. The stipulated protective order already in place here provides suitable protection for any privacy rights at issue. *Davidson*, 968 F.3d at 965.

The Court is not amendable to compelling the production of a partial class list. Defendant had the opportunity to negotiate with plaintiff and produce a sample of the class list in exchange for a trouble-free *Belaire* notice and chose not to do so The Court previously advised the parties that inability to reach agreement on a sample size might result in the obligation to produce class-wide discovery. *See* Doc. No. 41 at 3. That time has come. Defendant **SHALL PRODUCE** the entire class list to plaintiff within **two days** of the issuance of this Order.

**IT IS SO ORDERED.**

Dated:  December 18, 2023

Hon. Karen S. Crawford
United States Magistrate Judge